UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUILLERMO GARCIA, | ) Case No.: 1:10-cv-02097-BAM (PC) |
| Plaintiff, | ) ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | ) |
| M. MIX, et al., | ) (ECF No. 90) |
| Defendants. | ) |

### I.     Introduction

Plaintiff Guillermo Garcia ("Plaintiff") is a state prisoner proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983.  This action proceeds on Plaintiff's second amended complaint, filed on October 24, 2012, against Defendants Saylor and McCue for denial of access to the courts in violation of the First Amendment of the United States Constitution.  The parties have consented to the jurisdiction of a United States Magistrate Judge.  (ECF Nos. 5, 8.)

On June 6, 2014, Defendants Saylor and McCue filed a motion for summary judgment on the grounds that they did not violate Plaintiff's First Amendment rights because: (1) Plaintiff's dismissed civil rights action was frivolous; (2) Defendants did not hinder or obstruct Plaintiff's access to the court; (3) Plaintiff suffered no harm as a result of Defendants' conduct; and (4) Defendants are entitled

1

1  to qualified immunity.[1] (ECF No. 90.) Defendants also filed a request for judicial notice. (ECF No.
2  91.) Following extensions of time, on March 3, 2015, Plaintiff filed his opposition to the motion,
3  along with a request for judicial notice. (ECF No. 116.) Defendants filed their reply on March 10,
4  2015. (ECF No. 118.) The motion for summary judgment is deemed submitted. Local Rule 230(l).

## II. Summary of Relevant Allegations in Plaintiff's Second Amended Complaint

On August 4, 2008, while housed at Sierra Conservation Center, Plaintiff sent a request by legal mail to the litigation coordinator to appear for a telephonic court call on August 22, 2008, at 8:30 a.m., in case no. BC-356199. Defendant McCue, the litigation coordinator, and Defendant Saylor, a correctional counselor, had arranged for Plaintiff to participate in court calls on approximately fourteen prior occasions.

On August 22, 2008, at 8:30 a.m., Plaintiff appeared at Defendant Saylor's office. Plaintiff asked Defendant Saylor if he was available to make the court call and Defendant Saylor stated "no." Defendant Saylor told Plaintiff to make arrangements through the litigation coordinator's office. Plaintiff informed Defendant Saylor that he had made a request on August 4, 2008, and a second request five days before the court call. Plaintiff then went to speak with Sergeant Dean. Sergeant Dean told Plaintiff to go to school and he would be called later. At 10:00 a.m., Sergeant Dean contacted Plaintiff and told him to go to Defendant Saylor's office to make his court call. When Plaintiff called, the Clerk of the Court informed Plaintiff that the judge had already made a ruling.

On August 27, 2008, Plaintiff received a letter from the court informing him that the action had been dismissed because he did not appear for the court call.

Plaintiff alleges that Defendant Saylor retaliated against him by failing to provide phone access because he had filed an inmate appeal approximately one month prior in which he appealed an attempt by the Classification Committee, which included Defendant Saylor, to transfer him.

## III. Requests for Judicial Notice

Plaintiff and Defendants request that the Court take judicial notice of various court documents and records. (ECF No. 91; ECF No. 116, p. 88.) The Court may take judicial notice of court records

---

[1] Concurrent with the motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment. (ECF No. 92); See Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1988); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

in other cases. United States v. Howard, 381 F.3d 873, 876 n.1 (9th Cir. 2004). Further, the Court may take judicial "notice of proceedings in other courts, both within and without the federal system, if those proceedings have a direct relation to matters at issue." Bias v. Moynihan, 508 F.3d 1212, 1225 (9th Cir. 2007) (internal quotation marks and citation omitted).

In this instance, the Court has reviewed the parties' moving papers and finds that the separate requests for judicial notice should be granted in part and denied in part. The parties' requests for judicial notice of the court records and docket in Garcia v. Garcia (LAPD), Los Angeles County Superior Court Case No. BC356199, are GRANTED. These court records have a direct relation to the matter at issue, i.e., whether Defendants denied Plaintiff access to the courts in violation of the First Amendment by denying him phone use for a telephonic appearance in Garcia v. Garcia (LAPD). Further, Defendants' request for judicial notice of the appellate court records in the matter of Garcia v. Garcia, California Court of Appeal for the Second Appellate District Case No. B211309, also is GRANTED. Plaintiff's appeal following dismissal of Garcia v. Garcia (LAPD) is related to the issue of denial of court access in violation of the First Amendment.

The parties' remaining requests for judicial notice of certain exhibits are DENIED. The exhibits are either not properly subject to judicial notice, such as Plaintiff's deposition and Plaintiff's Inmate Requests for Interview, or not directly related to the matter at issue. Fed. R. Evid. 201 (court may take judicial notice of a fact that is not subject to reasonable dispute because it is generally known within the court's jurisdiction or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned); Bias, 508 F.3d at 1225.

**IV.   Defendants' Motion for Summary Judgment**

**A. Legal Standard for Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56(a) summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Summary judgment must be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). However, the court is to liberally construe the

3

filings and motions of pro se litigants. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (internal quotations and citations omitted).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.

In arriving at this order, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

### B. Undisputed Material Facts ("UMF")[2]

1. Plaintiff is serving a twenty-four year sentence for his 2004 felony conviction for lewd acts on a minor. (ECF No. 90-5, Ex. P to Declaration of Diana Esquivel ("Esquivel Dec."), Garcia Dep. 22:21-25.)

2. Plaintiff was incarcerated at Sierra Conservation Center ("SCC") from October 2007 to November 2011. (Garcia Dep. 23:1-4.)

---

[2] The material undisputed facts are derived from Defendant's Statement of Undisputed Facts. (ECF No. 90-2.) Unless otherwise indicated, only disputed material facts are omitted from this statement.

4

3. Defendant McCue was the Litigation Coordinator at SCC from 2007 to January 2010. Before August 22, 2008, Plaintiff did not know or have any interaction with Defendant McCue. (ECF No. 90-3, Declaration of McCue ("McCue Dec.") ¶ 1; Garcia Dep. 26:16-27:1.)

4. Defendant Saylor was a Correctional Counselor I at SCC from about 2007 to 2009. He was Plaintiff's counselor since Plaintiff's arrival at SCC. (ECF No. 90-4, Declaration of Saylor ("Saylor Dec.") ¶¶ 1, 3; Garcia Dep. 27:9-12.)

5. When Plaintiff arrived at SCC, he had three lawsuits pending: *Garcia v. Garcia (LAPD)*, Los Angeles County Superior Court Case No. BC356199[3]; *Garcia v. Berumen*, Los Angeles County Superior Court Case No. BD417861; and *Garcia v. Morris*, Los Angeles County Superior Court Case No. BD427954. (Garcia Dep. 27:13-28:4.)

6. *Garcia v. LAPD* was a civil-rights and negligence action that Plaintiff filed in July 2006. (Garcia v. LAPD Docket at 1, Ex. A to Defs' Req. for Jud. Not.; Garcia v. LAPD Compl. at 3, Ex. B to Defs' Req. for Jud. Not.)

7. In early July 2008, Plaintiff received a copy of an order issued in *Garcia v. LAPD*, setting a hearing for August 22, 2008. (Garcia Dep. 40:4-20.)

8. On August 4, 2008, Plaintiff sent a letter to the Litigation Coordinator and Defendant Saylor informing them of his August 22 hearing in *Garcia v. LAPD*. (Garcia Dep. 41:1-15; ECF No. 38, Second Am. Compl. at 31.)

9. Plaintiff has no evidence that Defendant McCue received his August 4 letter, and before August 22, 2008, he did not contact Defendant Saylor to inquire whether Defendant Saylor had received notice of the August 22 hearing. (Garcia Dep. 36:14-37:13, 41:16-19.)

Plaintiff objects and argues that CDCR provided a GA-22 Inmate Request for Interview without providing a copy of receipt in 2008. This objection does not raise a genuine dispute of material fact. Rather, it confirms the statement that Plaintiff has no evidence that Defendants received a copy of the letter or notice of the hearing.

---

[3] On December 4, 2006, the superior court granted Plaintiff's request to change the title of the action to Garcia v. Los Angeles Police Department. (See Defs' Req. for Jud. Not. Ex. I, p. 5.) However, subsequent filings and orders continued to list the case name as Garcia v. Garcia. This action is alternately referred to as Garcia v. Garcia (LAPD) or Garcia v. LAPD.

10. Not having received a response to his August 4 letter, Plaintiff submitted an "Inmate Request for an Interview" to the Litigation Coordinator five days before the August 22 hearing. (Garcia Dep. 41:20-43:10.)

11. Before August 2008, Defendant Saylor had provided Plaintiff with access to a telephone for a court appearance on at least three occasions. On one or two of those occasions, Plaintiff did not go through the proper procedures to obtain access to a telephone for his court appearance. Defendant Saylor nevertheless accommodated Plaintiff's request, but informed him that he needed to go through the Litigation Coordinator as required by prison regulations. (Saylor Dec. ¶ 3; Garcia Dep. 44:3-45:16.)

Plaintiff objects and argues that Defendant Saylor provided Plaintiff with at least 14 court calls. This objection does not raise a genuine dispute of fact. The parties agree that on at least three prior occasions Defendant Saylor provided Plaintiff with telephone access for court appearances.

12. At SCC, the Litigation Coordinator's office was responsible for arranging an inmate's telephonic court appearance at court hearings. If the inmate was involved in certain litigation where his telephonic appearance was required by law, such as divorce or child-custody proceedings, Defendant McCue or her staff arranged for the inmate's telephonic appearance upon proof that the inmate had such a hearing, and coordinated with the officers in the inmate's housing unit or the inmate's counselor to make a telephone available to the inmate on the date of his court hearing. (McCue Dec. ¶ 2.)

Plaintiff objects and argues that there was no posted information informing inmates about telephonic court appearances, contacting the Litigation Coordinator or the availability of a telephone on the date of court hearings. Plaintiff's objections regarding the posting of information does not raise a genuine dispute of material fact regarding the procedures and practices of the Litigation Coordinator's office related to telephonic court appearances.

13. If an inmate was involved in civil litigation where the California Department of Corrections and Rehabilitation was not a party, Defendant McCue or her staff arranged for the inmate's telephonic appearance if the court, where the action was pending, issued an order requiring the prison to make the inmate available by phone for the hearing and Defendant McCue's office was made aware of the order

in advance of the hearing. It was the inmate's responsibility to make the necessary arrangements with CourtCall for his telephonic appearance and to provide Defendant McCue or her staff with the CourtCall confirmation sheet. Defendant McCue or her staff then coordinated with the housing-unit staff or counselor to make a phone accessible to the inmate on the day of the hearing. (McCue Dec. ¶ 3.)

Plaintiff objects and contends that Defendant McCue did not follow her own procedures or provide these procedures to Plaintiff, inmates or the prison law library. This objection does not raise a genuine dispute regarding the substance of the procedures.

14. Defendant Saylor usually received notice of an inmate's need for phone access for a court appearance by email, memorandum sent through the institutional mail, or a phone call from the Litigation Coordinator or her staff. After he received notice of an inmate's scheduled court appearance, he marked the date on his calendar or created another reminder. Defendant Saylor's practice was to issue a pass for the inmate the day before the hearing. The pass notified the housing officers to allow the inmate to report to Defendant Saylor's office for the scheduled call. (Saylor Dec. ¶ 4.)

Plaintiff objects and argues that Defendant Saylor never provided passes. However, Plaintiff does not provide competent evidence to raise a genuine dispute regarding the issuance of passes.

15. When Defendant Saylor was informed of an inmate's court hearing, he was not informed what the case was about or if it was the same or a different case as previous phone appearances the inmate may have had. (Saylor Dec. ¶ 7.)

Plaintiff objects and argues that Defendant Saylor listened when Plaintiff was on a CourtCall. This assertion does not raise a genuine dispute of material fact regarding what Defendant Saylor knew prior to a court hearing.

16. On occasion, when Defendant Saylor did not receive advance notice from the Litigation Coordinator's office and an inmate went to his office informing Defendant Saylor of a court appearance for that day, Defendant Saylor accommodated the inmate's request for telephone access if the inmate provided Defendant Saylor with proof of the hearing and if Defendant Saylor had no other

1  pressing matter to attend to.  If Defendant Saylor was unable to accommodate the inmate, he usually
2  referred the inmate to the Litigation Coordinator to make other arrangements.  (Saylor Dec. ¶ 5.)

3  Plaintiff objects and argues that Defendant Saylor always made accommodations for him and
4  did not refer him to the Litigation Coordinator until Plaintiff filed a CDC-602.  Plaintiff's objection
5  does not raise a genuine dispute regarding Defendant Saylor's usual practice.

6  17. Defendant McCue had no knowledge of an inmate's court hearing if the inmate made
7  alternative arrangements with his counselor for a telephonic court appearance or if the inmate used a
8  telephone in the dayroom of the housing unit if he had a calling card or called a permitted toll-free
9  number.  (McCue Dec. ¶ 4.)

10  Plaintiff objects and argues that Defendant McCue would always have knowledge of a
11  CourtCall because the company would provide a confirmation to the Litigation Coordinator.
12  Plaintiff's objections do not raise a genuine dispute of fact regarding non-CourtCall telephonic court
13  appearances by inmates.

14  18. On August 22, 2008, Defendant Saylor and several counselors were processing a group of
15  inmates that had recently arrived at SCC and who needed to be classified.  Defendant Saylor was
16  conducting interviews and reviewing the central files of the new arrivals to prepare them for their
17  classification-committee meeting for their initial housing determination.  (Saylor Dec. ¶ 8.)

18  Plaintiff objects because Defendant Saylor did not tell Plaintiff that he had committee that
19  morning and did not tell Sergeant Dean.  Plaintiff's objections do not raise a genuine dispute of
20  material fact regarding Defendant Saylor's duties on August 22, 2008.

21  19. Around 8:15 a.m., Plaintiff informed Defendant Saylor that he had a court hearing that
22  morning.  Defendant Saylor informed Plaintiff that he had not received any notice or information from
23  the Litigation Coordinator's office about his court appearance.  (Saylor Dec. ¶ 9.)

24  20. Defendant Saylor called Defendant McCue, and informed her that Plaintiff was claiming that
25  he had a court hearing.  Because Defendant McCue had no information about Plaintiff's hearing and
26  could not confirm that he did in fact have a hearing, she informed Defendant Saylor to not allow the
27  call to the court.  (McCue Dec. ¶¶ 5-6; Saylor Dec. ¶¶ 9-10.)

28

Plaintiff objects because Defendant Saylor did not tell him that he had contacted Defendant McCue. That Defendant Saylor may not have told Plaintiff that he contacted McCue does not raise a genuine dispute of material fact.

21. Plaintiff left Defendant Saylor's office. Not long after, Sergeant Dean entered Defendant Saylor's office and informed him that Plaintiff had a court hearing scheduled for that morning. Defendant Saylor informed the Sergeant that he had no notice or confirmation of the hearing, that he and the other counselors were busy processing and classifying new arrivals, and that he did not have time to arrange for Plaintiff's phone call at that time. Defendant Saylor recommended that the Sergeant arrange for Plaintiff's court appearance or that Plaintiff return to Defendant Saylor's office when he was done with the new arrivals. Sergeant Dean left Defendant Saylor's office without informing him what, if anything, she intended to do. (Saylor Dec. ¶¶ 11-12.)

22. Plaintiff returned to Defendant Saylor's office later that morning with paperwork concerning his hearing. Defendant Saylor was not as busy as he had been earlier and placed the call for Plaintiff's court hearing. Plaintiff briefly spoke with someone, hung up the phone, and left Defendant Saylor's office. (Saylor Dec. ¶ 13.)

**Facts Regarding Garcia v. LAPD**

23. On July 28, 2006, Plaintiff filed *Garcia v. LAPD* against the Los Angeles Police Department, Los Angeles District Attorney's Office, the California State Bar, Pro Temp Judge Kumar, Assistant District Attorneys Martinez and Escobar, Public Defenders Verastigui and Brown, Private Attorney Browne, Police Officers and Investigators DeLeon, Worral, Sauls, and Geary, his daughter Monica G., his ex-wife Berumen, and his ex-wife's boyfriend Torre. Plaintiff alleged various causes of action for violations of his civil rights under the United States Constitution, false arrest and incarceration, perjury, failing to conduct a proper investigation, conspiracy, discrimination, and negligence arising from his arrest in July 2002 and subsequent 2004 conviction for lewd acts on his minor daughter. (Garcia v. LAPD Compl., Ex. B to Defs' Req. for Jud. Not.; Garcia Dep. 70:12-73:5.)

24. By December 2006, the State Bar was the only Defendant that Plaintiff had served or had appeared in the state action. (Garcia v. LAPD Docket at 4-5, Ex. A to Defs' Req. for Jud. Not.)

25. At the December 4, 2006 hearing, the superior court informed Plaintiff that it was issuing an Order to Show Cause (OSC) based on Plaintiff's failure to effect service on any other named defendant and set a hearing for February 8, 2007. (Minute Orders at 5-7, Ex. I to Defs' Req. for Jud. Not.; Order to Show Cause, Ex. C to Defs' Req. for Jud. Not.)

26. On December 19, 2006, the superior court sustained the State Bar's demurrer with leave to amend. (Minute Orders at 8-9, Ex. I to Defs' Req. for Jud. Not.; Order Sustaining Demurrer to Compl., Ex. D to Defs' Req. for Jud. Not.)

27. Plaintiff did not appear at the OSC hearing on February 8, 2007, and the superior court continued the matter to April 5, 2007. (Minute Orders at 10-13, Ex. I to Defs' Req. for Jud. Not.)

28. Plaintiff did not appear at the April 5, 2007 hearing, so the court continued the OSC to May 1, 2007. The superior court granted the State Bar's oral motion for judgment of dismissal. (Minute Orders at 14-15, Ex. I to Defs' Req. for Jud. Not.)

29. On May 1, 2007, Plaintiff again did not appear for the hearing. The superior court sustained Defendant Brown's demurrer to the original complaint, granted Plaintiff leave to amend certain causes of action against Brown, and continued the OSC to June 15, 2007. (Minute Orders at 16-19, Ex. I to Defs' Req. for Jud. Not.)

30. Plaintiff filed his first amended complaint on May 16, 2007, but Brown was the only named defendant. (First Am. Compl., Ex. E to Defs' Req. for Jud. Not.)

31. On June 15, 2007, the superior court sustained Brown's demurrer to the first amended complaint with leave to amend. After some discussion with Plaintiff about service, the court denied Plaintiff's request to order the Sheriff's Department to serve papers. The Court continued the OSC to August 30, 2007. (Minute Orders at 20-23, Ex. I to Defs' Req. for Jud. Not.; Order Sustaining Demurrer of Def. Patrick K. Brown to First Am. Compl., Ex. F to Defs' Req. for Jud. Not.)

32. Plaintiff did not file a second amended complaint, and on July 12, 2007, the superior court granted Brown's application to dismiss the complaint and enter judgment in his favor. Plaintiff did not appear at the hearing. (Garcia v. LAPD Docket, Ex. A to Defs' Req. for Jud. Not.; Minute Orders at 24-25, Ex. I to Defs' Req. for Jud. Not.)

33. Plaintiff did not appear at the OSC hearing on August 30, 2007, and the court continued the matter to October 19, 2007. (Minute Orders at 26-27, Ex. I to Defs' Req. for Jud. Not.)

34. At the October 19 hearing, Plaintiff requested, and the court denied, to stay the complaint. The issue of service was again discussed, and the superior court ordered Plaintiff to effectuate service on all Defendants in the action by December 19, 2007. The OSC was continued to January 31, 2008. (Minute Orders at 28-31, Ex. I to Defs' Req. for Jud. Not.)

35. On December 4, 2007, proofs of service on Berumen, Torre, and Escobar were filed. (Proof of Service, Ex. G to Defs' Req. for Jud. Not.)

36. Plaintiff appeared at the January 31, 2008 hearing, and again requested to stay the action, which the court denied. The judge admonished Plaintiff concerning his rights and responsibilities as a pro se litigant, and ordered him to "take all steps necessary to effectuate service." The court continued the OSC to March 28, 2008. (Minute Orders at 32-34, Ex. I to Defs' Req. for Jud. Not.)

37. On March 28, 2008, Plaintiff appeared at the hearing and requested default against Defendant Martinez. The superior court made no finding as to the appropriateness of default against Martinez, but ordered that Plaintiff's request be forwarded to the default-screening clerk. The court denied Plaintiff's oral motion to amend the complaint and continued the OSC to June 27, 2008. (Minute Orders at 35-36, Ex. I to Defs' Req. for Jud. Not.)

38. The superior court clerk rejected Plaintiff's March 28 and June 19, 2008, requests for entry of default against Martinez. (Garcia v. LAPD, Docket at 2, Ex. A to Defs' Req. for Jud. Not.)

39. Plaintiff did not appear at the June 27 OSC hearing. The superior court continued the OSC to June 30 and then to August 22, 2008, when Plaintiff again failed to appear. (Minute Orders at 37-41, Ex. I to Defs' Req. for Jud. Not.)

40. On August 15, 2008, Plaintiff filed a notice with the superior court with proofs of service on Defendants William J. Bratton (LAPD Chief of Police), Worral, Geary, and DeLeon. (Notice of Proof of Service of Summons, Ex. H to Defs' Req. for Jud. Not.)

41. The superior court dismissed the entire action on August 22, 2008, after Plaintiff failed to appear for the hearing. The court dismissed the action "pursuant to the Order to Show Cause." (Minute Orders at 42-44, Ex. I to Defs' Req. for Jud. Not.)

11

42. On October 2, 2008, Plaintiff filed a notice of appeal. (Not. of Appeal, Ex. J to Defs' Req. for Jud. Not.)

43. Plaintiff's appeal was subsequently dismissed based on his repeated failure to procure an adequate record on appeal. (Ex. K to Defs' Req. for Jud. Not.)

**C. Discussion**

Inmates have a fundamental constitutional right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). The right of access is the right to bring to court a grievance the inmate wishes to present, and is limited to direct criminal appeals, habeas petitions, and civil rights actions. Id. at 354. Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim). Christopher v. Harbury, 536 U.S. 403, 412–15, 122 S.Ct. 2179, 2185–87, 153 L.Ed.2d 413 (2002). A prisoner alleging a violation of his right of access to the courts must demonstrate that he has suffered "actual injury." Lewis, 518 U.S. at 349–50. The actual injury requirement mandates that an inmate "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." Id. at 353. The Supreme Court rejected the notion that the state must enable a prisoner to "litigate effectively once in court." Id. at 354 (quoting and disclaiming language contained in Bounds v. Smith, 430 U.S. 817, 825–26, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977)); see also Cornett v. Donovan, 51 F.3d 894, 898–900 (9th Cir.1995) (determining that prisoners' right of access to the courts is limited to the pleading stage of a civil rights action or petition for writ of habeas corpus).

The Court finds that Defendants Saylor and McCue are entitled to summary judgment. Assuming arguendo that Defendants Saylor and McCue had advance notice of the August 22, 2008 hearing and denied Plaintiff's call to the superior court, Plaintiff cannot demonstrate any actual injury from such denial. As noted above, a prisoner alleging a violation of his right of access to the courts must demonstrate that he has suffered "actual injury." Lewis, 518 U.S. at 349–50. Here, the undisputed evidence establishes that Plaintiff's civil rights action, Garcia v. Garcia (LAPD), was dismissed because of Plaintiff's failure to comply with an Order to Show Cause issued in December 2006, and Plaintiff's failure to effectuate service of the operative complaint. (UMF 41; ECF No. 116,

p. 32; Ex. C to Defs' Req. for Jud. Not; Ex. I to Defs' Req. for Jud. Not., pp. 42-44.)  Admittedly, the action was dismissed *after* Plaintiff's failure to appear, but the basis for the dismissal was wholly unrelated to his non-appearance.  (See, e.g., ECF No. 116-2, Pl's Ex. J, pp. 155-58; UMF 41; Ex. I to Defs' Req. for Jud. Not., pp. 42-44.)  In other words, Plaintiff's civil rights action was not dismissed *because of* his failure to appear at the hearing on August 22, 2008.  Plaintiff had failed to appear at numerous other hearings and the case had not been dismissed.  It was dismissed for failure to comply with the OSC and effectuate service.  Further, Plaintiff exercised his right to appeal the dismissal of the action.  (UMF 42.)  That Plaintiff's appeal was dismissed also does not satisfy the actual injury requirement.  The record reflects that the dismissal of the appeal was based on Plaintiff's own failure to procure an adequate record on appeal.  (UMF 43.)  Given the undisputed evidence, Plaintiff cannot show a causal connection between Defendants' asserted actions and the dismissal of Garcia v. Garcia (LAPD).  See Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (section 1983 requires that there be an actual connection or link between the actions of the defendant and the deprivation alleged to have been suffered by plaintiff).

Given the lack of causation and any actual injury, it is unnecessary to reach the parties' arguments regarding the underlying merits of Garcia v. Garcia(LAPD).   It is also unnecessary to reach Defendants' arguments regarding qualified immunity.

### V.   Conclusion and Order

For the reasons discussed above, it is HEREBY ORDERED that:

1. Defendants' motion for summary judgment, filed on June 6, 2014, is GRANTED; and
2. The Clerk of the Court is directed to enter summary judgment in favor of Defendants Saylor and McCue.

This terminates the action in its entirety.

IT IS SO ORDERED.

Dated:   **March 23, 2015**              /s/ *Barbara A. McAuliffe*
                              UNITED STATES MAGISTRATE JUDGE

13